# STATE OF MICHIGAN

# COURT OF APPEALS

MACK RODGERS and LILLIE RODGERS,

      Plaintiffs-Appellants,

v

JP MORGAN CHASE BANK NA and
UNKNOWN NOTEHOLDER,

      Defendants,

and

OCWEN LOAN SERVICING LLC,

      Defendant-Appellee.

FOR PUBLICATION
April 26, 2016
9:15 a.m.

No. 327403
Berrien Circuit Court
LC No. 13-000269-CK

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

SAAD, P.J.

Plaintiffs appeal the trial court order that granted defendant Ocwen Loan Servicing LLC's[1] motion for summary disposition. For the reasons provided below, we affirm.

## I. BASIC FACTS

The following facts are not in dispute. On November 10, 2006, plaintiffs obtained a loan for real property and granted a mortgage as security. By 2011, plaintiffs had defaulted on their loan and filed bankruptcy in the United States Bankruptcy Court for the Western District of Michigan. But rather than surrender the property in bankruptcy and discharge the debt, plaintiffs chose to reaffirm the debt.

Defendant received the servicing rights to the loan on April 2, 2012. Because of the risk of foreclosure, plaintiffs submitted an application to defendant for a modification of the loan. On

---

[1] The other named defendant, JP Morgan Chase Bank NA, was dismissed and is not part of this appeal. As a result, our use of the term "defendant" in this opinion will refer to Ocwen.

-1-

May 11, 2012, defendant sent plaintiffs a letter that explained the process for modifying the terms of the loan. The letter set out the three steps that would have to occur in order for a loan modification to become effectual:

> Step 1 – The first step in the approval process is to have your financial package reviewed for completeness. We must make sure that all of the required information has been submitted and the applicable forms are signed and dated appropriately. After you submit the financial package, there is no need to call us to check on it. If your package is incomplete, Ocwen will notify you through a letter indicating what documents are missing or incorrect. If your package is complete, it will automatically move to underwriting.

> Step 2 – Once the package has been certified as complete, your application moves to the underwriting stage where your eligibility is determined. If you have applied for assistance on your primary residence and your loan is a first lien, Ocwen will first look to qualify you for the federal government's Home Affordable Modification Program (HAMP). If we determine that you do not qualify for the HAMP modification, we will attempt to qualify you for an Ocwen sponsored modification program automatically. If you are applying for assistance on an investment property or second lien mortgage, you may still qualify for an Ocwen sponsored modification. If you do not qualify for either an HAMP or Ocwen modification, we will send you a letter with information on alternatives.

> Step 3 – If you qualify, we will send you either a Trial Period Plan offer or a modification offer depending on the program. It takes approximately 30 days for us to complete our review.

The letter was not signed by any individual but instead was closed with "Sincerely, Ocwen Loan Servicing, LLC."

On September 28, 2012, defendant wrote another letter to plaintiffs, which provided in pertinent part:

> **Congratulations!** This is the first step toward qualifying for more affordable mortgage payments. Please read this letter so that you understand all the steps you need to take to modify your mortgage payments.

> **What you need to do…**
> To accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following trial period payments in a timely manner:

> [Three trial payments of $768.95 each are due on November 1, 2012, December 1, 2012, and January 1, 2013.]

> After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified. (Your existing

loan and loan requirements remain in effect and unchanged during the trial period.)

As before, this letter was not signed by an individual but instead was closed with "Sincerely, Ocwen Loan Servicing, LLC."

In October 2012, defendant sent plaintiffs an eight-page "Home Affordable Modification Agreement." There were two portions that required plaintiffs' signature. The first portion described the new monthly payment schedule, and the other portion described how there was a balloon payment of $27,856.26 due on December 1, 2036, after the 287 monthly installments were complete. The agreement provided that after plaintiffs return two signed copies, defendant would countersign and return a fully signed version. The agreement further provided that it was not to take effect unless the preconditions in section 2 of the agreement have been satisfied. One of those preconditions states:

> I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

It is undisputed that defendant never returned a signed copy to plaintiffs. That is because on October 31, 2012, defendant noticed that, while plaintiffs signed the first portion of the agreement, they had failed to sign page 8 of the agreement, which pertained to the balloon payment disclosure. Consequently, on March 4, 2013, defendant closed the modification plan and wrote a letter to plaintiffs notifying them that their application for a modification was denied because they "failed to return the final modification agreement within the required timeframe." The denial letter was mailed on March 6.

On March 19, plaintiff Mack Rodgers called defendant to inquire about the denial. Defendant's representative informed Mack that no fully authorized final agreement was received. Defendant thereafter sent another copy of the agreement to plaintiffs for them to fully execute. However, there is no evidence that plaintiffs ever executed that agreement and returned it to defendant.

Plaintiffs filed their original complaint on September 25, 2013, which sought a declaration that the loan modification agreement was a binding contract and that defendant breached it. Defendant moved for summary disposition under MCR 2.116(C)(8), and the trial court granted the motion because plaintiffs failed to attach the written instruments they relied upon to their complaint, contrary to MCR 2.113(F). But the court allowed plaintiffs to amend their complaint.

Relevant to the appeal before us is plaintiffs' amended complaint, which was filed on August 29, 2014, and seeks a declaratory judgment that defendant breached the loan modification agreement and that defendant breached the implied covenant of good faith and fair

dealing. This time, plaintiffs attached the written documents they were relying upon, including the loan modification agreement at issue to the complaint.

Defendant again moved for summary disposition, this time under MCR 2.116(C)(10). Defendant argued that the statute of frauds, MCL 566.132(2), barred plaintiffs' claims because the loan modification agreement that plaintiffs sought to enforce was never signed by any authorized representative. Furthermore, defendant argued that even if the statute of frauds was not implicated, plaintiffs' claims must fail because (1) they never fully executed the modification agreement by signing the last page pertaining to the balloon payment disclosure and (2) defendant never signed the modification agreement either. The trial court agreed with all of defendant's reasons and granted the motion for summary disposition.

## II. STANDARD OF REVIEW

This Court reviews a trial court's decision on a motion for summary disposition de novo. *Johnson v Recca*, 492 Mich 169, 173; 821 NW2d 520 (2012). Defendant moved for summary disposition under MCR 2.116(C)(10), which tests the factual sufficiency of a complaint and is reviewed by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "Summary disposition pursuant to MCR 2.116(C)(10) is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law ." *McCoig Materials, LLC v Galui Constr, Inc*, 295 Mich App 684, 693; 818 NW2d 410 (2012).

Additionally, we review questions of contractual interpretation and statutory interpretation de novo. *Ligons v Crittenton Hosp*, 490 Mich 61, 70; 803 NW2d 271 (2011); *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). And whether the statue of frauds bars enforcement of a purported contract presents a question of law that this Court reviews de novo. *Zander v Ogihara Corp*, 213 Mich App 438, 441; 540 NW2d 702 (1995).

## III. ANALYSIS

Plaintiffs argue on appeal that the loan modification agreement should be enforced as a binding agreement between them and defendant. We disagree.

Plaintiffs assert that the statute of frauds is not a bar to the enforceability of the agreement. The relevant statute of frauds is found in MCL 566.132(2) and provides the following:

> An action shall not be brought against a financial institution to enforce any of the following promises or commitments of the financial institution unless the promise or commitment is in writing *and signed with an authorized signature* by the financial institution:

* * *

(b) A promise or commitment to renew, extend, modify, or permit a delay in repayment or performance of a loan, extension of credit, or other financial accommodation. [Emphasis added.]

As this Court has explained in *Crown Tech Park v D&N Bank, FSB*, 242 Mich App 538, 550; 619 NW2d 66 (2000):

> The statute of frauds specifically bars "an action." By not specifying what sort of "action" MCL 566.132(2) . . . prohibits, we read this as an unqualified and broad ban. We also note that the subsections of MCL 566.132(2) . . . use generic and encompassing terms to describe the types of promises or commitments that the statute of frauds now protects absolutely. This is consistent with interpreting MCL 566.132(2) . . . to preclude *all* actions for the enumerated promises and commitments, including actions for promissory estoppel. Further, it would make absolutely no sense to conclude that the Legislature enacted a new section of the statute of frauds specifically addressing oral agreements by financial institutions but, nevertheless, the Legislature still intended to allow promissory estoppel to exist as a cause of action for those same oral agreements.

Although we are not confronted with a purported oral agreement in the instant case, *Crown Tech Park*'s holding is nonetheless applicable.[2] Here, plaintiffs attempt to enforce a written agreement by relying on many documents, including the letters defendant sent to plaintiffs, which detail the modification process, and the loan modification agreement itself. However, none of these writings is "signed with an authorized signature." Thus, without any authorized signature, the statute of frauds bars *any* claim, regardless of its label, by plaintiffs to enforce any purported agreement. This bar covers plaintiffs' claims based on any theory, including their theory of breach of contract, breach of the implied covenant of good faith and fair dealing, and estoppel.

Moreover, the trial court correctly ruled that summary disposition was proper apart from the bar of the claims based on the statute of frauds. Clearly, the relevant agreement that plaintiffs seek to be declared enforceable is the loan modification agreement.[3] That agreement

---

[2] We disagree with the non-binding federal authority plaintiffs rely on that suggests that *Crown Tech Park*'s holding should be limited to circumstances involving oral promises. See *Yates v US Bank Nat'l Ass'n*, 912 F Supp 2d 478, 488 (ED Mich, 2010). We see no reason why MCL 566.132(2)'s requirement of an authorized signature is to be given less weight as its requirement of a writing.

[3] While defendant sent letters to plaintiffs leading up to the presentment of the loan modification agreement, those letters contained no specific terms regarding any loan modification. Indeed, the May 11, 2012, letter plainly uses conditional language, such as, "If you qualify." And the September 12, 2012, letter references the actual loan modification agreement that is to come and which will need to be executed by plaintiffs: "After all trial period payments are timely made *and you have submitted all the required documents*, your mortgage will be permanently modified." (Emphasis added.)

contained express conditions that must be satisfied before the agreement would be enforceable. Section 2 of the agreement listed these conditions, one of which states:

> I understand that the Loan Documents will not be modified unless and until (i) I receive from the Servicer a copy of this Agreement signed by the Servicer, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Servicer will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

Thus, one of the conditions precedent to the formation of the contract was that plaintiffs receive a signed copy of the agreement from defendant. It is undisputed that this never occurred. Indeed, that defendant did not return a signed copy is understandable because plaintiffs themselves never signed the balloon payment disclosure, which was an integral part of the agreement. Hence, because neither party fully executed the agreement and the conditions precedent to the formation of the contract were not satisfied, there is no agreement to enforce.

Further, plaintiffs' reliance on the doctrine of substantial performance is misplaced. The doctrine of substantial performance is used to determine if a party can be considered to have fulfilled its obligation under a contract, even though it has not fully performed. See *Black's Law Dictionary* (10th ed) (defining the "substantial-performance doctrine" as "[t]he rule that if a good-faith attempt to perform does not precisely meet the terms of an agreement or statutory requirements, the performance will still be considered complete if the essential purpose is accomplished . . . ."). However, this doctrine is inapplicable to the fulfillment of express conditions. See *Fisher v Burroughs Adding Machine Co*, 166 Mich 396, 402-403; 132 NW 101 (1911); *Brown-Marx Associates, Ltd v Emigrant Savings Bank*, 703 F2d 1361, 1367-1368 (CA 11, 1983); 17A Am Jur 2d, Contracts, § 616, p 573. As a result, because the express conditions precedent to the formation of the contract were not fulfilled, the contract never came into existence, and is consequently not enforceable. *Knox v Knox*, 337 Mich 109, 118; 59 NW2d 108 (1953).

And, similarly because no contract was formed, plaintiffs' reliance on the implied covenant of good faith and fair dealing is unavailing. "It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract 'that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " *Hammond v United of Oakland, Inc*, 193 Mich App 146, 151-152; 483 NW2d 652 (1992), quoting *Fortune v Nat'l Cash Register Co*, 373 Mass 96, 104; 364 NE2d 1251 (1977). But plaintiffs' claim based on this theory must fail because "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Fodale v Waste Mgmt of Mich, Inc*, 271 Mich App 11, 35; 718 NW2d 827 (2006); see also *Ulrich v Fed Land Bank of St Paul*, 192 Mich App 194, 197; 480 NW2d 910 (1991), citing *Kewin v Mass Mut Life Ins Co*, 409 Mich 401, 422-423; 295 NW2d 50 (1980). Moreover, these covenants are applicable only if there is a valid, enforceable contract. But, as already discussed, no contract was ever formed. Thus, it is clear that dismissal of this claim was warranted.

Affirmed.  Defendant, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola