# STATE OF MICHIGAN

# COURT OF APPEALS

LV 204, LLC,

      Plaintiff-Appellant,

v

LUCIA GATMAITAN,

      Defendant-Appellee.

UNPUBLISHED
October 17, 2017

No. 332916
Oakland Circuit Court
LC No. 2015-149225-CH

Before: GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Plaintiff LV 204, through its agent David Clapper, negotiated with defendant Lucia Gatmaitan to purchase her historical lakefront mansion. Although the parties agreed to certain terms, negotiations quickly fell apart and plaintiff never bought the home. The circuit court summarily dismissed plaintiff's action to force a sale, determining that the parties had not formed a contractual agreement. We affirm.

## I. BACKGROUND

Defendant owned a historic home on a 10-acre lakefront parcel on Lake Angelus. The estate is "rumored to be the Fisher family's summer mansion, designed by Albert Kahn." On March 2, 2013, Clapper offered to purchase the property for $1,700,000, with $1,000,000 cash up front and the remainder in the form of a $700,000 promissory note with 6% interest per annum payable for 10 years. Clapper desired to purchase the home with "everything that is of the home's vintage, including but not limited to area rugs, wall hangings, and décor." Clapper opted to forgo an inspection, instead requesting only 14 days to conduct his due diligence, which he defined as "everything to evaluate the property other than the dwellings, pool and boat house." Clapper later assigned his interest in the purchase offer to his corporation, LV 204.

On March 6, 2013, defendant counteroffered, raising the purchase price to $1,800,000, limiting the wall hangings included in the sale to "draperies," and providing that the home was being sold "as is." Plaintiff contends that he accepted this counteroffer by signing it at the bottom of the document. However, plaintiff admits that he did not initial each change made by defendant as required by ¶ 27 of the purchase offer, entitled "counteroffer."

Over the next two and a half years, the parties went back and forth over the purchase of the property. On March 6, plaintiff notified defendant that he "may want to apply for a loan to

-1-

raise additional cash" and asked for accommodation if the closing was delayed as a result. Defendant agreed. Thereafter, plaintiff requested numerous concessions completely inconsistent with the original offer. Plaintiff desired to secure a mortgage loan from JPMorgan Chase Bank and therefore scheduled an inspection and appraisal. He then demanded that defendant make costly repairs and asserted that he would pay no more than $1,550,000. Defendant did not accept those terms. In January 2015, plaintiff learned that defendant was entertaining another serious buyer for the property. He filed a claim of interest with the Oakland County Recorder of Deeds, preventing defendant from selling the property to anyone else. Purchase negotiations continued, with plaintiff then demanding a sale with only $150,000 cash up front.

On September 21, 2015, plaintiff finally filed suit, alleging breach of contract and requesting a declaratory judgment and injunctive relief. Defendant responded with a counterclaim, alleging slander of title, tortious interference with prospective economic advantage, seeking a declaratory judgment and to quiet title. Each party requested summary disposition in its favor.

Ultimately, the circuit court dismissed plaintiff's claims and quieted title in defendant. The court determined that the parties had not reached a valid and binding contract. The "counteroffer" provision of the purchase offer required plaintiff to accept a counteroffer made by defendant by initialing next to any changes she made in the document. Plaintiff did not do so, negating the elements of a contract.

The court continued, however, that even if the contract were valid, it would find the contract ambiguous as plaintiff initialed a provision in the form purchase offer indicating that he would forego a property inspection. Yet, the offer indicated that plaintiff had 14 days of "due diligence to evaluate the Property." And if the contract were valid and not ambiguous, the court ruled that summary disposition would still be appropriate because plaintiff did not conduct the property inspection within 14 days as provided in the due diligence provision. Additionally, the court accepted defendant's alternative argument that summary disposition of plaintiff's claims was proper under the doctrine of laches. Describing laches as "the equitable counterpart of a statute of limitations," the court noted that plaintiff waited two-and-a-half years to file his complaint after making his initial offer to purchase the property. In the interim, plaintiff submitted a series of futile counteroffers and amended offers with ever decreasing value to defendant. This amounted to a lack of due diligence on plaintiff's part.

Plaintiff now appeals.

## II. EXISTENCE OF A CONTRACT

Plaintiff contends that the parties entered a valid and enforceable contract and therefore summary disposition was inappropriate. We review de novo a circuit court's summary disposition ruling. *Beaudrie v Henderson*, 465 Mich 124, 129; 631 NW2d 308 (2001). The court granted summary disposition in defendant's favor pursuant to MCR 2.116(I)(2). The court rule provides that if "the pleadings show that a party is entitled to judgment as a matter of law, or if the affidavits or other proofs show that there is no genuine issue of material fact, the court shall render judgment without delay." "There is a genuine issue of material fact when reasonable minds could differ on an issue after viewing the record in the light most favorable to the

nonmoving party." *BC Tile & Marble Co, Inc v Multi Bldg Co, Inc*, 288 Mich App 576, 583; 794 NW2d 76 (2010) (quotation marks and citation omitted). "The existence and interpretation of a contract are questions of law" that we also review de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

To form a valid contract, "there must be an offer and acceptance." *Pakideh v Franklin Commercial Mtg Group, Inc*, 213 Mich App 636, 640; 540 NW2d 777 (1995). There is no question that plaintiff made an offer to defendant and that defendant responded with a counteroffer. The question is whether plaintiff accepted that counteroffer to form a valid contract. "Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed." *Id*. Only "[i]f an offer does not require a specific form of acceptance, [may] acceptance . . . be implied by the offeree's conduct." *Id*.

The purchase offer included specific means by which the buyer could accept a counteroffer by the seller. Specifically, the offer states:

> **COUNTEROFFER**: In the event Seller makes any written changes to terms and conditions herein, such changes, if initialed and Seller Acceptance executed, shall constitute a counteroffer by Seller to Buyer. . . . Acceptance of counteroffer by Buyer occurs when *Buyer initials each change*, signs Buyer Acknowledgement of Acceptance (bottom line), and delivers notice to Seller by time stipulated above. [Emphasis added.]

We must apply and enforce the clear and plain language of this contract. *Ajax Paving Indus, Inc v Vanopdenbosch Constr Co*, 289 Mich App 639, 644; 797 NW2d 704 (2010). Although plaintiff complied with the other acceptance requirements, he did not initial the changes defendant made within the document to form a counteroffer. As plaintiff's purported acceptance was not "in strict conformance with the offer," it was not truly an acceptance and no contract was formed.

Plaintiff contends, however, that even if there was a "defect or incomplete acknowledgement in the [c]ounter-offer," it "was either waived or rendered moot when" defendant signed an amendment to the "contract" allowing him to seek bank financing. The amendment was actually signed on the same day that defendant tendered her counteroffer. The amendment applied "only . . . to the now executed agreement, if the seller agrees." By signing the "amendment" defendant was not ratifying the existence of a contract. No contract existed because plaintiff had not accepted defendant's counteroffer as provided in the document. At most, defendant's signature represented her agreement that if or when the parties formed a contract, the closing could be delayed as required by a potential lender.

Plaintiff further asserts that the existence of a contract was plain from the parties' conduct in the following years. He notes that the parties' attorneys "corresponded for several months . . . and the parties moved forward pursuant to the terms of the cont[r]act." In this vein, plaintiff emphasizes that the parties and their attorneys frequently used the term "contract" in their correspondence. People, even lawyers, do not always use precise and accurate language in communications, or even in documents of legal importance. In recognition of this reality, this Court has repeatedly held that courts must analyze a party's legal claims on their substance and

not their labels. See *Buhalis v Trinity Continuing Care Servs*, 296 Mich App 685, 691-692; 822 NW2d 254 (2012). Courts also may not take at face value an employer's designation of a person as an "independent contractor" versus an "employee," for example. See *Laster v Henry Ford Health Sys*, 316 Mich App 726, 736; 892 NW2d 442 (2016). The use of the term "contract" therefore is not dispositive.

Plaintiff contends that the parties' conduct amounted to "substantial performance" under the contract. "The doctrine of substantial performance is used to determine whether a party can be considered to have fulfilled its obligation under a contract even though that party has not fully performed." *Rodgers v JP Morgan Chase Bank NA*, 315 Mich App 301, 310; 890 NW2d 381 (2016). The doctrine does not apply when "no contract was formed" in the first instance, as in this case. *Id*. Moreover, the conduct cited by plaintiff as fulfilling his obligations under the contract—property inspections, appraisals, attempts to secure financing—actually violate the alleged contract, i.e., the purchase offer. Plaintiff offered to take the property without inspection and without financing. His actions in contravention of that promise are further evidence that no contractual agreement was reached.

That no contract was formed is also supported by plaintiff's repeated offers to pay an ever-shrinking amount for the property and to reduce the offer of cash to be paid up front, and demands that defendant remedy issues uncovered during his inspections. Defendant never agreed to any of these terms, expressly sticking to her counteroffer to sell the property as-is for $1,800,000 with $1,000,000 cash down and the remaining $800,000 to be paid on land contract. Plaintiff refused to abide by the offer and never made any attempt to pay the $1,000,000 or to enter a land contract. Plaintiff's continued negotiation of terms is proof positive that no contract was entered.

As no contract was formed, the circuit court properly denied plaintiff's motion to summarily dispose of the matter in its favor and granted summary disposition in favor of defendant. Given our resolution of this issue, we need not determine whether the circuit court correctly analyzed alternative grounds to support its ruling.

We affirm.


/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle