*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAN'S EXCAVATING, INC. and FLORENCE
CEMENT COMPANY,

        Plaintiffs-Appellants,

v

DEPARTMENT OF TRANSPORTATION and
STATE OF MICHIGAN,

        Defendants-Appellees.

UNPUBLISHED
April 9, 2020

No. 347817
Court of Claims
LC No. 18-000164-MZ

Before: SAWYER, P.J., and LETICA and REDFORD, JJ.

PER CURIAM.

In this contract dispute, plaintiffs, Dan's Excavating, Inc. (DEI), and its subcontractor, Florence Cement Company (Florence), appeal as of right the Court of Claims's order granting summary disposition in favor of defendants, the Michigan Department of Transportation (MDOT) and the State of Michigan. We affirm.

## I. BACKGROUND

The Court of Claims provided this summary of the pertinent facts:

Plaintiff Dan's Excavating Inc. (DEI) and Michigan Department of Transportation (MDOT) entered into a contract whereby DEI would serve as the contractor to reconstruct a portion of Dequindre Road in Oakland and Macomb Counties. DEI subcontracted some of its contractual obligations to plaintiff Florence Cement Corporation (Florence). Under the subcontract, Florence was required to pave portions of the reconstructed road in accordance with pavement plans provided in the contract. Specifically, plaintiffs allege that the contract called for two different types of concrete pavement—miscellaneous concrete pavement and mainline concrete pavement—both of which were subcontracted to Florence. The contract purportedly showed, through diagrams, that the total quantity of miscellaneous concrete pavement to be used in the project was 17,559.99 square yards, and the total quantity of mainline concrete pavement to be used in the project was 35,332

square yards. Plaintiffs say that, pursuant to the contract, MDOT was supposed to pay DEI for the quantity figures set forth in the diagrams at the unit price of $54.65 per square yard for the miscellaneous concrete pavement and $40.05 per square yard for the mainline concrete pavement.

In their complaint, plaintiffs allege that MDOT "miscategorized or miscalculated" the total quantities of miscellaneous and mainline concrete pavements that were provided in the contract and, thus, that Florence used in the project. According to plaintiffs, even though the contract mandated and Florence actually placed 17,559.99 square yards of miscellaneous concrete pavement and 35,332 square yards of mainline concrete pavement, MDOT only paid for 2,993 square yards and 49,899.06 square yards, respectively. Thus, plaintiffs assert that MDOT underpaid DEI by $212,771.70.

Plaintiffs filed suit alleging breach of contract and unjust enrichment. Defendants moved for summary disposition of all three counts under MCR 2.116(C)(8) (failure to state a claim) and (10) (no question of material fact). The Court of Claims granted defendants' motion and dismissed the case. This appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's grant or denial of summary disposition de novo. *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 287; 731 NW2d 29 (2007). "A court may grant summary disposition under MCR 2.116(C)(8) if the opposing party has failed to state a claim on which relief can be granted." *Dalley v Dykema Gossett*, 287 Mich App 296, 304; 788 NW2d 679 (2010) (quotation marks and alterations omitted). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Adair v Michigan*, 470 Mich 105, 119; 680 NW2d 386 (2004) (quotation marks omitted). "Summary disposition on the basis of subrule (C)(8) should be granted only when the claim is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Dalley*, 287 Mich App at 305 (quotation marks omitted).

A motion for summary disposition under MCR 2.116(C)(10) "tests the factual sufficiency of the complaint[.]" *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 206; 815 NW2d 412 (2012). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). Summary disposition is proper where there is no "genuine issue regarding any material fact." *Id.* "A genuine issue of material fact exists when reasonable minds could differ on an issue after viewing the record in the light most favorable to the nonmoving party." *Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting*, 322 Mich App 218, 224; 911 NW2d 493 (2017) (quotation marks and citation omitted). In deciding motions for summary disposition, "[t]he court may not make factual findings or weigh credibility[.]" *Manning v Hazel Park*, 202 Mich App 685, 689; 509 NW2d 874 (1993).

## III. BREACH OF CONTRACT

Plaintiffs raise several arguments challenging the Court of Claims's decision to grant summary disposition in favor of defendants on plaintiffs' breach of contract claims.

We review de novo questions involving the proper interpretation of a contract or the legal effect of a contractual provision. *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). The primary goal of contract interpretation is to enforce the parties' intent. *Burkhardt v Bailey*, 260 Mich App 636, 656; 680 NW2d 453 (2004). For this purpose, we interpret "the language of the contract in accordance with its plain and ordinary meaning." *McCoig Materials, LLC v Galui Const, Inc*, 295 Mich App 684, 694; 818 NW2d 410 (2012). To determine the meaning of a word or phrase, we must also consider the context or setting in which it appears. See *Bloomfield Estates Improvement Ass'n, Inc v City of Birmingham*, 479 Mich 206, 215; 737 NW2d 670 (2007). Contracts must be read "as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 50 n 11; 664 NW2d 776 (2003). Interpretations that render any part of the contract surplusage or nugatory must be avoided. *McCoig Materials, LLC*, 295 Mich App at 694. "A contract is unambiguous, even if inartfully worded or clumsily arranged, when it fairly admits of but one interpretation." *Id*. Further, if a contract incorporates another document by reference, the two writings should be read together. *Forge v Smith*, 458 Mich 198, 207 n 21; 580 NW2d 876 (1998). Clear and unambiguous contract language must be enforced as written. *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012).

## A. AFFIDAVIT SUBMITTED WITH REPLY BRIEF

Plaintiffs first argue that the Court of Claims erred when it relied on evidence included in an affidavit that defendants appended to their reply brief in support of their motion for summary disposition. Plaintiffs assert that they were not permitted to file a response and that the Court of Claims improperly made factual findings on the basis of that affidavit.

"Reply briefs must be confined to rebuttal, and a party may not raise new or additional arguments in its reply brief." *Kinder Morgan Mich, LLC v City of Jackson*, 277 Mich App 159, 174; 744 NW2d 184 (2007), citing MCR 7.212(G). In this case, defendants presented the challenged arguments and evidence in rebuttal to plaintiffs' assertion that they had received the project drawings from MDOT's engineer in the "native electronic format," namely computer-aided design (CAD) drawings, and that those CAD drawings showed the "proper" quantities of miscellaneous and mainline concrete to be used in the project. MDOT submitted an affidavit from its engineer to rebut plaintiffs' assertions about the CAD drawings, specifically explaining that CAD drawings were not part of the contract and could not be relied upon to calculate quantities of concrete.

Further, on this record, reasonable minds could not differ that the CAD drawings were not part of the contract. Indeed, the contract incorporates several documents by reference, stating: "This document, including attached Form FHWA-1273, the plans, specifications and proposal and all addenda, are part of this contract." Also, Standard Specification § 104.06 lists the contract

documents and establishes an order of precedence in case of conflict:

> A.   All proposal material except those listed in subsections 104.06.B through 104.06.F,
>
> B.   Special provisions,
>
> C.   Supplemental specifications,
>
> D.   Project plans and drawings,
>
> E.   Standard plans, and
>
> F.   Standard specifications.

The electronic CAD drawings that plaintiffs relied on are not part of the contract under § 104.06. MDOT's engineer's affidavit provided additional clarification about the CAD drawings to assist the lower court's consideration of this technical case.  Notably, based on our review, plaintiffs never actually asserted that the CAD drawings were part of the contract itself, even though they believed they should be able to rely on them because of their practicality and ease of use.  Moreover, the Court of Claims did not make an improper factual finding regarding the affidavit's "bare assertion" that the plans called for 2,800 square yards of miscellaneous concrete, because the Final Plans, which the contract incorporated by reference, included that specification.  The same is true of the bid sheet from MDOT's Proposal.  Thus, the Court of Claims relied on the unambiguous contract terms rather than any assertions in MDOT's affidavit about the quantity of miscellaneous concrete.

## B.  NATURE OF CLAIM FOR COMPENSATION

Plaintiffs additionally contend that the affidavit MDOT appended to its reply brief misled the Court of Claims into concluding that they sought extra compensation on the contract, rather than a correction of MDOT's allocation of miscellaneous concrete into the mainline concrete category.  However, as we discussed, the plain language of the contract called for 2,800 square yards of miscellaneous concrete.  Instead of following the quantity plainly set forth in the contract, plaintiffs resorted to the CAD drawings to argue that a much larger amount of miscellaneous concrete was in order.  Plaintiffs' claim for compensation from MDOT for the difference was thus a "claim for extra compensation" on the contract, which was governed by § 104.10.

## C.  FACTUAL FINDINGS

Plaintiffs argue that the Court of Claims erred by making factual findings regarding the Standard Specifications governing the notice requirements imposed on plaintiffs, specifically § 104.10.D.2. Plaintiffs assert that because their claim concerned "final quantities," the applicable submission deadline was not 60 days after completion of the work in question, but rather "60 calendar days after the final acceptance of all contract work" under Standard Specification § 104.10.D.2.  Thus, they claim that they should have had until 60 days after MDOT's August 31, 2018 transmission of its proposed final quantities contract modification to file their claim. However, plaintiffs' argument is contrary to the contract's plain language.

The Standard Specifications provide, in relevant part, as follows:

**104.10. Claim for Extra Compensation or Time Extension**. *The Contractor must sign and submit a claim for extra compensation or time extension to the Department, whether on behalf of the contractor or any tier subcontractor. If the Contractor fails to submit a claim in accordance with the Department's written claim procedure in effect at the time the Contractor files the claim and this subsection, the Contractor waives its rights to compensation* or a time extension for the claim. This waiver applies whether or not, as a result of the Contractor's failure to comply with these requirements, the Department's rights were prejudiced. The Contractor and Department will use the following procedure for claims:

A. **Notice of Claim**. *The Contractor must sign all notices of intent to file a claim and ensure the written notice includes a concise description of the claim and identifies the contract requirement in dispute.* If seeking extra compensation for any reason not specifically covered elsewhere in the contract, the Contractor must notify the Engineer in writing in accordance with the following time requirements

\* \* \*

*If the Contractor fails to provide written notice, the Contractor waives all rights to a claim for compensation* or a time extension except if the Department prepared records that substantiate the claims with regard to liability and amount, and claims are for extra costs that were unforeseeable. If the Contractor fails to provide proper written notice for extra compensation or if the Contractor fails to allow the Engineer to record accounts of actual costs, the Department's claims process decision regarding extra compensation will be considered final and binding.

\* \* \*

D. **Timing for Filing of Claim**. The Contractor must file a claim with the Engineer within the following timeframes, whichever occurs first:

1. *No later than 60 calendar days after the work involved in the claim is completed*, or the delay, loss of efficiency, loss of productivity, or similar event is terminated; or

2. No later than 60 calendar days after the final acceptance of all contract work.

\* \* \*

E. **Claim Content and Certification**. *The Contractor's claim must include a completed Form 1953* Claim Content and Certification *that contains the following information*, as applicable . . . . [Emphasis added.]

The contract unambiguously specifies in § 104.10.D that DEI file a claim, including a completed Form 1953, "[n]o later than 60 calendar days after the *work involved in the claims* is completed . . ." "*or*" "[n]o later than 60 calendar days after the final acceptance of all contract

work," "*whichever occurs first*." (Emphasis added.) The project engineer's affidavit attached to MDOT's motion for summary disposition indicated that the miscellaneous and mainline concrete pavement work was completed by November 14, 2016. However, in the body of the motion itself, MDOT asserted that the concrete pavement work was finished by December 14, 2016. Plaintiffs, in turn, put forward August 31, 2018 as the date of final acceptance of all contract work, but the latter is the latest of the contending dates, thus not the one that "occurs first." Accordingly, DEI's deadline for proper submission of a claim regarding payment for the miscellaneous and mainline concrete pavement work was 60 days after December 14, 2016, at the latest. Therefore, the Court of Claims did not err when it calculated the timing for filing a claim under the plain language of the contract.

## D. SUBMISSION OF A CLAIM FOR EXTRA COMPENSATION

Plaintiffs contend that the Court of Claims erred when it ruled that DEI never submitted a signed claim for extra compensation on behalf of itself or Florence in accordance with the written claim procedure set forth in § 104.10. Plaintiffs note that, while Florence submitted a Form 1953, an employee of DEI submitted an e-mail to the Oakland County Road Commission's project manager stating that there was a dispute over the quantity of miscellaneous pavement for which payment was due. Plaintiffs argue that, taken together, Florence's Form 1953 and the e-mail on behalf of DEI fulfilled the notice procedures required in § 104.10. In support plaintiffs rely upon a DEI's employee's April 27, 2017 e-mail to the Road Commission's project manager and attach a copy to their brief. However, plaintiffs have not indicated where in the record below any such e-mail may be found and our review reveals no copy. Further, plaintiffs did not move this Court to allow them to expand the record. See MCR 7.216(A)(4). We therefore decline to consider the e-mail on which plaintiffs now rely. *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal."); see also MCR 7.210(A).

But even if we were to consider the reproduction of the latter e-mail, we would conclude that DEI did not properly file a claim under § 104.10 for extra compensation on behalf of its subcontractor, Florence. Plaintiffs cite no authority in support of their argument that the Form 1953 and the e-mail on which they now rely might be merged into one submission that collectively meets all of the requirements of § 104.10. "An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give issues cursory treatment with little or no citation of supporting authority." *Houghton ex rel Johnson v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003) (citations omitted). In fact, the Form 1953 and subsequent e-mail were separate submissions, neither of which on its own met the requirements of § 104.10. Further, even if these documents constituted a satisfactory submission under § 104.10.E, it would still be untimely under § 104.10.D. The Form 1953 was dated April 25, 2017, and the e-mail was dated April 27, 2017, which are respectively 132 and 134 days after the December 14, 2016 completion of work involved in the claim. Neither submission met the 60-calendar day time requirement for filing under § 104.10.D.

## E. WAIVER

Plaintiffs argue that the Court of Claims erred when it declined to acknowledge the factual questions regarding MDOT's waiver of the contractual specification of the "contractor" as the

party authorized to submit an objection to proposed final quantities. Plaintiffs acknowledge that Standard Specification § 109.07.D states that the "contractor" has 30 calendar days to submit a protest, but point out that the specification has no penalty for when the subcontractor is the submitting party. Plaintiffs assert that, by working directly with Florence, MDOT waived objections to Florence's February 2, 2017 correspondence to the Oakland County Road Commission protesting the proposed final quantities.

"Mutuality is the centerpiece to waiving or modifying a contract," and "a party alleging a waiver or modification must establish a mutual intention of the parties to waive or modify the original contract." *Quality Prod & Concepts Co v Nagel Precision, Inc*, 469 Mich 362, 364, 372; 666 NW2d 251 (2003). "This mutuality requirement is satisfied where a waiver or modification is established through clear and convincing evidence of a written agreement, oral agreement, or affirmative conduct establishing mutual agreement to modify or waive the particular original contract." *Id*. at 364-365. When a party "relies on a course of conduct to establish waiver or modification, the law of waiver directs [the] inquiry and the significance of written modification and anti-waiver provisions regarding the parties' intent is increased." *Id*. at 365. "Mere knowing silence generally cannot constitute waiver." *Id*. "The party asserting the waiver bears the burden of proof." *Cadle v City of Kentwood*, 285 Mich App 240, 255; 776 NW2d 145 (2009).

In this case, DEI bore the burden to produce clear and convincing evidence that DEI and MDOT mutually agreed to waive the requirement that DEI, as contractor, sign and submit the claim, and to allow DEI's subcontractor, Florence, to do so in its place. However, plaintiffs have not presented any evidence of a mutually agreed-upon waiver, in writing or otherwise, and their argument that MDOT effected such a contractual waiver only by working directly with Florence is unpersuasive.

## F. SUBSTANTIAL PERFORMANCE

In their reply brief, plaintiffs urge us to consider the doctrine of substantial performance when evaluating plaintiffs' adherence to its contractual obligations. "The doctrine of substantial performance is used to determine whether a party can be considered to have fulfilled its obligation under a contract even though that party has not fully performed." *Rodgers v JPMorgan Chase Bank NA*, 315 Mich App 301, 310; 890 NW2d 381 (2016). But plaintiffs not only raise this argument for the first time on appeal, they do so only in their reply brief. See *Kinder Morgan Mich*, 277 Mich App at 174; MCR 7.212(G) ("Reply briefs must be confined to rebuttal of the arguments in the appellee's or cross-appellee's brief[.]"). Thus, we decline to consider their argument now.

## IV. UNJUST ENRICHMENT

Plaintiffs argue that the Court of Claims erred when it ruled that Florence's unjust enrichment claim was barred by § 108.01 of the contract between MDOT and DEI. Plaintiffs also contend that the Court of Claims erred when it declined to consider whether Florence established the elements of an unjust enrichment claim. "Whether a claim for unjust enrichment can be maintained is a question of law that we review de novo." *Karaus v Bank of New York Mellon*, 300 Mich App 9, 22; 831 NW2d 897 (2012).

In this case, Standard Specification § 108.01 states that "[n]o subcontractor or supplier may maintain an action against the Department for payment relating to the work; any such action must be brought against the Contractor or other responsible party." Plaintiffs contend that the latter provision cannot apply to an unjust enrichment claim brought by Florence because Florence was not a party to the contract between DEI and MDOT. However, Florence's claims against defendants arise out of DEI and MDOT's contract. Likewise Florence's status is as a plaintiff in the contract action below and as an appellant before this Court.[1] Florence cannot properly claim contract damages under that agreement while disclaiming its provision shielding MDOT from legal action "for payment relating to the work" on the part of subcontractors and directing that any such legal action be "brought against the Contractor or other responsible party." And because the contract upon which Florence relies covered the issue of payments for concrete, unjust enrichment was not available as an alternative theory of relief. Accordingly, Florence, as DEI's subcontractor, may look to DEI for redress of its grievances concerning payments for concrete, but not to defendants under any theory. The Court of Claims thus properly granted summary disposition in favor of defendants on plaintiffs' claims for unjust enrichment.

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ James Robert Redford

---

[1] Although the parties have not engaged in a third-party-beneficiary analysis, we conclude Florence had that status in connection with the subject contract.

-8-