*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

ANNE MARIE HALL,

        Plaintiff/Counterdefendant-Appellant,

v

BASMA EL-BATHY and RAMI S. MOSTAFA,

        Defendants/Counterplaintiffs-
        Appellees.

UNPUBLISHED
October 27, 2025
9:43 AM

No. 371689
Oakland Circuit Court
LC No. 2021-189384-CH

Before: FEENEY, P.J., and BORRELLO and BAZZI, JJ.

PER CURIAM.

This breach of contract action involving the sale of real property returns after a remand by this Court[1] and a bench trial. Plaintiff/counterdefendant-appellant, Anne Marie Hall, appeals as of right the trial court's opinion and order: (1) entering judgment for defendants/counterplaintiffs-appellees, Basma El-Bathy and Rami S. Mostafa, and (2) finding that defendants properly effectuated termination of the parties' purchase agreement for real property.[2] We affirm.

## I. FACTS

This is the second time that this matter has come before this Court. This case stems from a May 20, 2021 Purchase Agreement ("Purchase Agreement") between plaintiff and defendants for the purchase of real property defendants owned (the "Property").

## A. UNDERLYING FACTS

Before this case began, plaintiff, a licensed realtor, had been living at the Property as defendants' tenant. In December 2020, plaintiff expressed an interest in purchasing the Property.

---

[1] *Hall v El-Bathy*, unpublished per curiam opinion of the Court of Appeals, issued May 18, 2023 (Docket No. 362063).

[2] The trial court also dismissed defendants' counterclaims.

-1-

In January 2021, the parties discussed a purchase price and plaintiff met with her loan officer at First National Mortgage Bankers to discuss the potential sale. In February 2021, plaintiff offered to draft the Purchase Agreement. In March 2021, plaintiff formally initiated her loan application. In May 2021, plaintiff finally drafted the Purchase Agreement. Defendants signed the Purchase Agreement on May 15, 2021, but on May 16, 2021, when plaintiff tried downloading the document, one of defendants' signatures disappeared. Plaintiff waited until May 20, 2021, to ask defendants to sign the document again, which they did on that same day; however, plaintiff did not receive a copy of the document until May 28, 2021, after defendants' counsel sent a copy to the title company.[3]

The Purchase Agreement confusingly stated that: (1) the closing must take place on or before May 31, 2021, and (2) "[i]f a firm commitment for such mortgage cannot be obtained within 27 calendar days from date of acceptance [which was May 20, 2021], at [defendants'] or [plaintiff's] written option, this offer can be declared null and void . . . ." The Purchase Agreement instructed plaintiff to apply for her mortgage "within [two] calendar days from acceptance of this offer," and comply with her lender's requests for information. Defendants were to "contribute [$9,290] to [plaintiff's] closing costs, prepaid items[,] and escrows" as well as "pay [plaintiff's] mortgage insurance premium of [$6,210]."

A day after signing the purchase agreement, El-Bathy sent a text message to plaintiff, stating as follows:

> Hey Anne,
>
> Sorry we have been fried these two days. Please let us know if you have some free time after 5pm Eastern time today for us to talk. We hate to be doing this, but unfortunately the real estate market in Troy & Chicago has jumped significantly from February when we agreed on a price. At this point, the current selling price would result in compounded loss for us– loss on the house in Troy and further disadvantage in our current home-buying efforts given that sharp spike in home prices over the past few months. We hate these changes in the market, and hate that we have no option but to renegotiate the selling price. Just to give you time to think about this before we talk, we would list the house for $340ishk now. For you, we can accept a minimum of $310k (price includes the 10k for roof) and we would be looking to split the title cost evenly between us. We studied closely house sale prices over the past 2 years for the market that Brooklawn is situated in and think this is quite a competitive price. We frankly are as aggrieved by all these changes as we are sure you are bound to feel, but we are bound by this aggressive market in which banks are the primary winners. Please think it over and let us know what's a good time for us to talk.

On May 26, 2021, plaintiff's counsel: (1) informed defendants that by sending the text message they did not adhere to the terms of the Purchase Agreement, which was a breach of contract; and

---

[3] Plaintiff's lender received the document on June 1, 2021.

(2) demanded "written confirmation within five (5) days, that the Agreement is valid, enforceable and binding and that you will consummate the Agreement at a mutually agreed upon closing date." On May 27, 2021, defendants' counsel responded, stating that defendants "have never failed or refused to consummate the sale. They are ready, willing, and able to close the sale on the schedule mandated by the [Purchase] Agreement and plan to do so."

On May 31, 2021, plaintiff requested that the parties execute an addendum extending the date of closing 30 days. Defendants did not sign this addendum, but the parties eventually agreed to extend the deadline to close on June 28, 2021. On July 1, 2021, after the parties did not close by the new deadline, defendants terminated the Purchase Agreement. As of July 7, 2021, First National had still not received plaintiff's IRS transcripts that First National required, but on July 28, 2021, plaintiff was "cleared to close."

"Plaintiff brought a claim of breach of contract against defendants for 'advis[ing] Plaintiff they were no longer intending to adhere to the terms of the Agreement and/or refusing to close.' Plaintiff also sought specific performance." *Id*. at 3 (alteration in original). Defendants moved for summary disposition, alleging that plaintiff breached the Purchase Agreement by: "(1) failing to apply for a mortgage within two calendar days of the execution of the Purchase Agreement, (2) failing to provide a firm loan commitment within 27 days of execution of the Purchase Agreement, and (3) failing to close on or before May 31, 2021." *Id*. at 3-4. Plaintiff opposed defendants' motion for summary disposition, contending that El-Bathy's text message was an anticipatory repudiation of the Purchase Agreement. *Id*. at 4. The trial court granted defendant's motion for summary disposition, finding that defendants properly declared the Purchase Agreement null and void. *Id*. at 4-5.

## B. PRIOR APPEAL

In May 2023, a panel of this Court reversed the trial court's decision and remanded "for proceedings consistent with this opinion." *Id*. at 8. The panel held that the trial court failed to address: (1) "whether defendants 'unequivocally declare[d] the intent not to perform' in the May 21, 2021 text sent by El-Bathy," and (2) "plaintiff's deposition testimony that her efforts at securing the financing, and in turn proceed to closing, were hampered by defendants' failure to timely act, including the return of the signed Purchase Agreement, and request for modifications to the agreement." *Id*. at 7 (alteration in original). Accordingly, the panel concluded as follows:

> The trial court erred in granting summary disposition because questions of material fact existed regarding whether defendants' repudiated the contract terms, whether this alleged repudiation continued through the remainder of the parties' dealings, and whether this repudiation constituted a breach of the implied covenant of good faith and fair dealing or an otherwise substantial breach. [*Id*. at 5.]

## C. REMAND

After remand by this Court, the trial court held a bench trial in which substantially similar evidence was submitted,[4] along with the following information.

Regarding the May 21, 2021 text message asking to renegotiate the purchase price, El-Bathy testified that she was not unwilling to close, nor did she wish to alter the Purchase Agreement. Rather, the text message was sent to create a sense of urgency because of plaintiff's delays and lack of communication, which were harming defendants. Although plaintiff admitted that defendants did not directly state a desire to cancel the Purchase Agreement or extend the closing date in the text message, she testified that she did not believe defendants intended to move forward with the Purchase Agreement.

Regarding plaintiff's May 31, 2021 addendum to extend the closing date, defendants admitted they did not sign it for various reasons, including wanting to see proof that plaintiff applied for the loan. Although defendants' counsel initially requested a concession to allow the extension of the closing date, the parties ultimately agreed to extend the deadline to close to June 28, 2021, without any new terms.

## D. THE TRIAL COURT'S DECISION ON REMAND

The trial court entered judgment for defendants on both counts of plaintiff's complaint. The trial court concluded that defendants properly terminated the Purchase Agreement on July 1, 2021, finding that: (1) defendants' actions did not constitute an anticipatory repudiation of the Purchase Agreement, and (2) even if a repudiation occurred, defendants "cured the repudiation" by defendants' counsel's May 27, 2021 e-mail. The trial court also found that "any alleged breach . . . of the covenant of good faith and fair dealing was not the cause of any of [plaintiff's] damages." Notably, the trial court provided a lengthy, "non-exhaustive list of reasons and delays" that plaintiff caused.

The trial court further concluded that there was no breach of contract because plaintiff did not demonstrate that she suffered any damages by a preponderance of the evidence. The trial court noted "that this transaction fell apart because [plaintiff] was unable to obtain a firm mortgage loan commitment within [27] days of . . . June 1, 2021, which is the date that the lender indisputably had possession of the Purchase Agreement." Because plaintiff failed to secure a loan commitment by June 28, 2021, defendants "were well within their rights to exercise their right to terminate the Purchase Agreement as they did on July 1, 2021." The trial court continued as follows:

> [T]he [trial court] also briefly notes that there is an alternative analysis, which may technically be more proper—which is that the provision requiring a closing by May 31, 2021, and the provision requiring a firm loan commitment within 27 days of May 20, 2021, are in direct conflict, and "ambiguities are to be construed against the drafter of the contract." *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 470; 663 NW2d 447 (2003). And not only was [plaintiff] the drafter of the Purchase Agreement, but <u>she is a licensed realtor</u>. Therefore, [the trial court] believes it

---

[4] For clarity's sake, additional evidence concerning procedural dates of importance have been incorporated into the "Underlying Facts" section of this opinion.

would be appropriate to simply state that [plaintiff] was required to close by May 31, 2021, regardless of any delays, because . . . it is the closing date that the licensed realtor and drafter of the contract chose, and therefore the ambiguity should be construed against her, no matter how harsh.

Plaintiff now appeals.

## II.  DISMISSAL OF CLAIMS

On appeal, plaintiff generally argues that the trial court erred by dismissing her claims for breach of contract and specific performance.  We disagree.  Plaintiff specifically raises claims concerning anticipatory repudiation, good faith and fair dealing, the law-of-the-case doctrine, waiver, and forfeiture—and each of these claims lack merit.

### A.  PRESERVATION AND STANDARDS OF REVIEW

Because the parties raised these issues before the trial court, they are preserved for appellate review.  See *Ayotte v Dep't of Health & Human Servs*, 337 Mich App 29, 39; 972 NW2d 282 (2021).[5]

"The circuit court's findings of fact, if any, following a bench trial are reviewed for clear error, while its conclusions of law are reviewed de novo." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 92; 842 NW2d 388 (2013).  "De-novo review means that we review the legal issue independently, without deference to the lower court." *Bowman v Walker*, 340 Mich App 420, 425; 986 NW2d 419 (2022) (quotation marks and citation omitted).  "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been committed." *Walters v Snyder*, 239 Mich App 453, 456; 608 NW2d 97 (2000).

We review "de novo issues of contractual interpretation.  If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." *Tripp v Baker*, 346 Mich App 257, 272-273; 12 NW3d 45 (2023) (quotation marks and citations omitted).  "[W]e review de novo a trial court's dispositional ruling on an equitable matter." *Morris Pumps v Centerline Piping, Inc*, 273 Mich App 187, 193; 729 NW2d 898 (2006).  At a bench trial, the trial court is "obligated to determine the weight and credibility of the evidence presented." *Wright v Wright*, 279 Mich App 291, 299; 761 NW2d 443 (2008).  "We defer to the trial court's credibility determinations given its superior position to make these judgments." *Shann v Shann*, 293 Mich App 302, 305; 809

---

[5] The only issue that was not raised in the trial court is plaintiff's claim that defendants forfeited the right to terminate the Purchase Agreement.  Although we could deem that claim waived under the raise or waive rule of appellate review in civil cases, we choose to overlook the failure to preserve this argument because it involves questions of law with undisputed facts and resolution is necessary for proper resolution of the appeal.  See *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023).

NW2d 435 (2011). "Waiver is a mixed question of law and fact. The definition of a waiver is a question of law, but whether the facts of a particular case constitute a waiver is a question of fact." *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006) (citation omitted).

"Whether the law-of-the-case doctrine was properly invoked and to what extent it applies to a case are questions of law that we also review de novo." *Rott v Rott*, 508 Mich 274, 286; 972 NW2d 789 (2021). "Whether a trial court properly interpreted the scope of a remand is a question of law that this Court reviews de novo." *Law Offices of Jeffrey Sherbow, PC v Fieger & Fieger, PC*, 347 Mich App 533, 546; 15 NW3d 356 (2023).

## B. ANTICIPATORY REPUDIATION

"A valid contract requires: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Barclae v Zarb*, 300 Mich App 455, 471; 834 NW2d 100 (2013). "The party seeking to enforce a contract bears the burden of proving that the contract exists." *AFT Mich v Michigan*, 497 Mich 197, 235; 866 NW2d 782 (2015). "[P]arties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 51; 664 NW2d 776 (2003). "A refusal to perform in compliance with a valid contract amounts to a breach of a contract and may entitle the other party to damages or other forms of relief[.]" *AFT Mich*, 497 Mich at 209. "A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Constr, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014). "The rule in Michigan is that one who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Michaels v Amway Corp*, 206 Mich App 644, 650; 522 NW2d 703 (1994) (quotation marks and citations omitted). But "that rule only applies when the initial breach is substantial." *Id.*

> The doctrine of anticipatory repudiation mandates that
>
> if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance. In determining whether a repudiation occurred, it is the party's intention manifested by acts and words that is controlling, not any secret intention that may be held. [*Stoddard v Mfr Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999) (citation omitted).]

Our Supreme Court has held, in the context of a real-estate contract, that if the seller anticipatorily repudiates, the buyer is excused from performing the contractual obligation to tender the purchase price to preserve a right to specific performance. See *Hanesworth*, 320 Mich at 579-580. "Specific performance is an equitable remedy . . . ." *Zdero v Briggs Mfg Co*, 338 Mich 549, 552; 61 NW2d 615 (1953). "Land is presumed to have a unique and peculiar value, and contracts involving the sale of land are generally subject to specific performance." *In re Smith Trust*, 480 Mich 19, 26; 745 NW2d 754 (2008).

## 1. EL-BATHY'S TEXT MESSAGE

Plaintiff first contends that the trial court clearly erred by finding that defendants: (1) did not repudiate the Purchase Agreement through El-Bathy's text message or (2) timely cured the repudiation. We disagree.

A day after signing the purchase agreement, El-Bathy sent the text message to plaintiff, stating in relevant part as follows:

> [T]he current selling price would result in compounded loss for us. . . . We . . . hate that we have no option but to renegotiate the selling price. **Just to give you time to think about this before we talk**, we would list the house for $340ishk [sic] now. For you, we can accept a minimum of $310k (price includes the 10k for roof) and we would be looking to split the title cost evenly. . . . **Please think it over and let us know what's a good time for us to talk**. [Emphasis added.]

The statement, "we have no option but to renegotiate the selling price," and the fact a new minimum purchase price was stated, are most suggestive of defendants' intent to repudiate. But the text message also stated that plaintiff could "think about this," noting that the parties would later talk about the option to "renegotiate the selling price." The text message did not directly state that defendants were not planning to close. In fact, on the same day that the text message was sent, El-Bathy expressed concern to plaintiff about the feasibility of the closing date and offered an extension of the date to June 17, 2021.

The trial court found that the text message was "an open invitation to discuss the matter and hardly a clear indication that non-performance is occurring." The trial court found that El-Bathy's testimony was more credible than plaintiff's testimony; on the basis of El-Bathy's testimony, the trial court found that the text message "was merely trying to express urgency to [plaintiff] to actually move forward and close on the transaction after numerous delays by [plaintiff]." On the basis of the record, and affording due deference to the trial court's credibility determinations, see *Shann*, 293 Mich App at 305, we conclude that the trial court did not err by finding that defendants did not anticipatorily repudiate the Purchase Agreement in this regard. See *Stoddard*, 234 Mich App at 163. Because we conclude that the text message was not an anticipatory repudiation, we do not reach plaintiff's argument that the anticipatory repudiation was not cured.

## 2. DEFENDANTS' DELAY IN DELIVERING THE PURCHASE AGREEMENT

Plaintiff further contends that defendants' delay in delivering the executed Purchase Agreement constituted a repudiation of the Purchase Agreement, and that this repudiation

continued when defendants refused to sign plaintiff's May 31, 2021 addendum to extend the closing date.[6] We disagree.

Plaintiff asserts that she was unable to close by the May 31, 2021 closing date because defendants did not deliver a copy of the executed Purchase Agreement until May 28, 2021, which delayed plaintiff's ability to provide First National with a copy of the document until June 1, 2021. This argument lacks merit. The trial court concluded that the eight-day delay was not the reason why plaintiff was unable to timely close the transaction. Instead, the trial court made several relevant findings, including that: (1) it was impossible for plaintiff to close by May 31, 2021, because financing was required; (2) plaintiff was not cleared to close until July 28, 2021; and (3) plaintiff herself caused delays throughout the process. The trial court also noted that the Purchase Agreement allowed plaintiff 27 days from the "date of acceptance" to obtain "a firm commitment for such mortgage"—"and so even assuming [plaintiff] had [27] days from June 1, 2021, which is the date that the lender confirmed it had received the fully executed Purchase Agreement, [plaintiff] would still need to have obtained a loan commitment by June 28, 2021, and she indisputably failed to do so[.]" In fact, plaintiff was not "cleared to close" until July 28, 2021, and part of the delay occurred because First National did not have plaintiff's IRS transcripts.

It is worth emphasizing that plaintiff, a licensed realtor and the drafter of the Purchase Agreement, selected the closing date in the Purchase Agreement, and "the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms." *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 549; 904 NW2d 192 (2017) (quotation marks and citation omitted). Simply put, plaintiff could have chosen another closing date that would have aligned better with the status of the loan application. Yet, even as of: (1) May 24, 2021, First National was contacting plaintiff about missing documents to process her loan application, including a COVID-19 business impact form and her 2020 tax return; and (2) June 25, 2021, First National still required her IRS transcripts.

Of importance, the parties eventually agreed to extend the closing deadline to June 28, 2021, but when the parties did not close by the new date, defendants terminated the Purchase Agreement. The trial court did not clearly err when it concluded that defendants "were well within their rights to exercise their right to terminate the Purchase Agreement as they did on July 1, 2021." Although defendants' counsel initially requested a concession to extend the closing date, there is

---

[6] Plaintiff does not explain how refusing to sign an addendum constitutes an anticipatory repudiation. "A party may not simply announce its position and leave it to this Court to discover and rationalize the basis for the party's claim." *Badiee v Brighton Area Schools*, 265 Mich App 343, 373; 695 NW2d 521 (2005) (quotation marks and citation omitted). Accordingly, we decline to address this argument. See *id*. Moreover, contrary to plaintiff's position on appeal, the trial court did not ignore El-Bathy's testimony about her refusal to sign the addendum. Rather, the trial court specifically noted El-Bathy's testimony that she did not sign "because she was unaware of what was happening in the transaction," and wanted additional proof showing plaintiff "had applied for a loan, had received pre-approval, and had made the earnest money deposit . . . ." [Should we agree with plaintiff that the PA did not require plaintiff to make an earnest money deposit, or should we leave it alone?]

no evidence any concession was provided. Rather, the parties agreed to provide plaintiff 27 days to obtain a loan commitment after the date First National received the Purchase Agreement. Accordingly, on the basis of the record, and affording due deference to the trial court's credibility determinations, see *Shann*, 293 Mich App at 305, we conclude that the trial court did not err by finding that defendants did not anticipatorily repudiate the Purchase Agreement in this regard. See *Stoddard*, 234 Mich App at 163.

## C. GOOD FAITH AND FAIR DEALING

Plaintiff further argues that defendants failed to act in good faith and fair dealing by refusing to timely deliver the executed Purchase Agreement or sign the addendum, which constituted a breach of contract. Plaintiff's reliance on this theory to advance a breach-of-contract claim is meritless.

"It has been said that the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Rodgers v JPMorgan Chase Bank NA*, 315 Mich App 301, 310-311; 890 NW2d 381 (2016). But, "Michigan does not recognize a cause of action for breach of the implied covenant of good faith and fair dealing." *Id*. at 311 (quotation marks and citation omitted). Accordingly, the trial court did not err by rejecting plaintiff's argument about the implied covenant of good faith and fair dealing. See *id*.

## D. LAW-OF-THE-CASE DOCTRINE AND REMAND INSTRUCTIONS

Plaintiff further contends that this Court should reverse the trial court's opinion and order under the law-of-the-case doctrine because the trial court "ignored the anticipatory repudiation doctrine and the duty of good-faith for a second time and harnessed its decision on prejudice." We disagree.

"The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Law Offices of Jeffrey Sherbow, PC*, 347 Mich App at 546 (quotation marks and citation omitted). "It is the duty of the lower court or tribunal, on remand, to comply strictly with the mandate of the appellate court." *Rodriguez v Gen Motors Corp*, 204 Mich App 509, 514; 516 NW2d 105 (1994). Accordingly, "[w]hen an appellate court remands a case with specific instructions, it is improper for a lower court to exceed the scope of the order." *Int'l Business Machines Corp v Dep't of Treasury*, 316 Mich App 346, 350; 891 NW2d 880 (2016) (quotation marks and citation omitted).

The law-of-the-case doctrine "provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue, but only if the facts remain materially the same." *Brownlow v McCall Enterprises, Inc*, 315 Mich App 103, 110; 888 NW2d 295 (2016) (quotation marks and citations omitted). "The doctrine's purpose is the need for finality of judgments and the lack of jurisdiction of an appellate court to modify its judgments except on rehearing." *Id*. (quotation marks and citation omitted). The law-of-the-case doctrine "applies only to issues *actually decided*, either implicitly or explicitly, in the prior appeal." *Rott*, 508 Mich at 287 (quotation marks and citation omitted).

As an initial matter, despite providing some general caselaw about the law-of-the-case doctrine, plaintiff provides little analysis on how it applies to these facts. "A party may not simply announce its position and leave it to this Court to discover and rationalize the basis for the party's claim." *Badiee v Brighton Area Schools*, 265 Mich App 343, 373; 695 NW2d 521 (2005) (quotation marks and citation omitted). Accordingly, we decline to address this argument. See *id*. Nevertheless, we note that plaintiff's assertion that "[t]he trial court ignored the anticipatory repudiation doctrine and the duty of good-faith for a second time and harnessed its decision on prejudice" on remand is simply incorrect. As previously discussed, the trial court properly analyzed the doctrine of anticipatory repudiation and the implied covenant of good faith and fair dealing. Additionally, contrary to plaintiff's assertion on appeal, the trial court did not discuss whether there was prejudice.

## E. WAIVER AND FORFEITURE

Plaintiff further asserts that defendants waived the right to enforce any of plaintiff's deficiencies for failing to close by May 31, 2021. Alternatively, plaintiff argues that defendants forfeited the right to terminate the Purchase Agreement. We disagree.

"A waiver is an intentional relinquishment or abandonment of a known right. An affirmative expression of assent constitutes a waiver. In contrast, a failure to timely assert a right constitutes a forfeiture." *Nexteer Auto Corp v Mando America Corp*, 314 Mich App 391, 395; 886 NW2d 906 (2016) (citations omitted). "A valid waiver may be shown by express declarations or by declarations that manifest the parties' intent and purpose, or be an implied waiver, evidenced by a party's decisive, unequivocal conduct reasonably inferring the intent to waive." *Home-Owners Ins Co v Perkins*, 328 Mich App 570, 585; 939 NW2d 705 (2019) (quotation marks and citation omitted).

Plaintiff argues that because defendants allowed her to continue efforts to secure financing after May 31, 2021, defendants waived the right to enforce any breach by plaintiff stemming from her failure to timely close. This argument is meritless. The Purchase Agreement listed the closing date as May 31, 2021, but the parties eventually extended that deadline to June 28, 2021. Even assuming that there were a waiver of certain dates and deadlines, there is no evidence supporting plaintiff's assertion that defendants waived their rights to terminate the agreement. After plaintiff did not close by June 28, 2021, defendants exercised their right to terminate the Purchase Agreement on July 1, 2021. Accordingly, defendants also did not forfeit their right to terminate the Purchase Agreement. To be clear, the trial court did not err by finding that the termination was valid.

Affirmed.

/s/ Kathleen A. Feeney
/s/ Stephen L. Borrello
/s/ Mariam S. Bazzi